By the Court, Robertson, Ch. J.
The complaint not only sets up. a refusal by the defendant to pay money claimed to have been received by him in a fiduciary capacity *507 for the plaintiff’s assignor, (Parker,) hut also his conversion of the same money. The relief demanded by it is the payment of a certain sum ($30,000) which it claims to have been the damages sustained by Parker by reason of the refusal of the defendant to pay over the proceeds of certain stock (Erie Railroad Co.) sold on behalf of the former, less the cost of a like number of shares, on a certain day, (May 24th, 1866,) when he required the defendant to buy them, and offered to allow him to deduct sufficient out of such proceeds for the purpose of paying the price thereof. Of course, if this were a mere action for damages for not buying stock according to instructions on a particular day, after an agreement to do so, the defendant could not be held to bail. Bor is there any thing before us to fix on the defendant a charge of having converted money not belonging ■ to him. The money received by him had no earmark. It was not a special deposit, nor does the complaint undertake to describe the kind or character of such money. It evidently became a mere debt, or chose in action, although if the defendant had received the money in a fiduciary capacity, he may be bound, under penalty of being arrested and held to bail therefor, to be able at all times to respond to a demand for it. A conversion of money, and its receipt in a fiduciary capacity, must necessarily be entirely different and inconsistent. The latter renders the liability to pay. such money a mere debt; the former constitutes a tort.
Most probably the defendant would be liable to be arrested in an action for the money received by him, if it had simply been deposited in his hands by the plaintiff’s assignor, as his money, free of all claims, in order to buy certain stock therewith, and he had refused so to apply it or pay it back. But in this case the prior part of the transactions between the parties left this money in his hands, as stated in the affidavit of Parker, as security against loss in case of a rise in the value of the stock. How he could sustain such loss if, according to the terms of his understanding with Parker, he was bound continually to borrow shares of stock to re *508 place previous loans in succession, and wait the pleasure of his employer to relieve him from responsibility by buying the stock, is not -explained. It is sufficient, however, that he was entitled to retain it to protect some interest of his own, which may have been, as he had made himself personally liable to restore the stock, to buy it in, in case he was unable to borrow it, particularly as it is admitted he was entitled to use, upon the same contingency, or hold the additional sum, ($8500,) which had been placed in his hands for a like purpose.
I do not understand the second subdivisión of the 179th section of the Code to have intended to include in the class of persons secondly m entioned therein as liable to be arrested, any one except those tyho received moneys purely in a fiduciary capacity as simple agents, to apply it as directed or agreed. If so, it excludes all those who may have a personal interest in such money or its use, and a right to control it, independently of any appropriation of it according to instructions of the owner, or where the liability for'repaying such moneys grows out of a transaction in which credit appears to have been given to the pecuniary responsibility of the recipient, rather than confidence placed in his personal character. The duty imposed upon a consignee of a vessel, in the payment of her expenses, has been considered to be sufficient to relieve him from liability to arrest for the price of such vessel subsequently received by him on a sale thereof, out of which he was entitled to reimburse himself for such payments. (Goodrioh v. Dunbar, 17 Barb. 664.) A personal guaranty to a consignor of goods for sale, of the fidelity and responsibility of consignees, given by their agent, in consideration of an undertaking by such consignor to make good any deficiency in the proceeds of the sales of such goods below advances on them by such consignees or agent, was held to take away from the receipt by such agent, from such consignor, of the amount of such deficiency, all fiduciary character, as regarded such consignees, so as to exempt ■ him from arrest. (Angus v. Dunscomb, 8 How. Pr. *509 14.) The right of an agent to use moneys collected by him on drafts remitted for the purpose until drafts were drawn on him for them by the remitter, where he undertook to pay interest thereon, was also held to exempt him from arrest for the proceeds of a draft collected by him, even after he knew he was insolvent. (Bassing v. Thompson, 15 How. 97.) In this case the personal liability of the defendant to replace the borrowed stock, and his right to use the funds in his hands to protect himself from loss, took away from the act of trusting him with such proceeds, any purely confidential character, in the authority to receive them. To permit him to retain, and mingle with his own, the original funds, and become liable for them simply as a debt, in case he did not apply them to the purchase of stock, was rather a credit than a confidence. If such moneys were also to be used or employed in assisting the defendant in any way to carry out any agreement for keeping up always a loan of the stock, his right to retain them until relieved from such liability still farther destroyed any confidential character of the original receipt of them.
Although the fiduciary character of a receipt of money be part of the essence of the cause of action when a defendant is arrested in consequence thereof, and where rights and relations of the parties, growing out of complicated arrangements and conditions accompanying such receipt of moneys, require to be investigated to ascertain whether any of the money so received be due by reason of the performance or discharge of all such conditions, the investigation by affidavits of the whole case may become often very uncertain, unsatisfactory and embarassing, while the simple question whether a defendant 'has received moneys to dispose of in a certain way may be easily determined; yet when such agent is admitted to have a lien upon the moneys received by him by reason of having incurred liabilities for the plaintiff for which he is entitled to retain such moneys, until satisfied, in such a case as the present, the court cannot take an account in advance, to ascertain what the balance *510 due the plaintiff may be, so as to hold the defendant to bail for such balance, particularly where it does not clearly appear by the affidavits on behalf of the plaintiff, but is the subj ect of unliquidated damages in the complaint.
If the testimony of the defendant and that of Parker are to be weighed against each other, it seems very difficult to reconcile both statements of the latter, that the former was expected and agreed to continue borrowing the stock until required by him to buy it, and yet that same contingency might arise, in which, by reason of a fall in the stock, he was entitled to use the" deposit originally made, as well as the purchase moneys, to provide against such loss. There are two other statements in the same affidavit, which still further obscures the nature of the arrangement. One is that, “Even if the. defendant had been obliged to buy in such stock, he * * should have deferred the purchase until the following morningand again, “ That on the following day the defendant could have made a resale of said stock, and it ivas his duty under the aforesaid agreement to mahe a resale of the same and reinstate the transaction.” It is difficult to discover how it became such duty from a contract perpetually to borrow. If the defendant was vested with a discretion to buy or borrow in the alternative, as he might think proper, then there is nothing, to show that his purchase of the stock, at the time he made it, was not discreet. He was not bound to foreknow the future fall, and some evidence of bad faith is necessary to charge him with the consequences. But I think it is not necessary to pass upon the conflicting evidence of the parties in this case. I am satisfied, upon the allegations contained ill the statement of Parker, that the moneys received by the defendant were not so received by him in an exclusively fiduciary capacity as to warrant his arrest.
The order appealed from, refusing to discharge the order of arrest, should therefore be reversed, and the motion to discharge granted, without costs to either party.